WOOLMAN CONSTRUCTION CO. *v.* COCHRANE.

1. EVIDENCE—JUDICIAL NOTICE.

   The court will take judicial notice of the fact that there is no rock so solid but that in time it could be picked to pieces and removed by tools without the use of explosives.[1]

2. DRAINS—CONTRACTS—RIGHT OF CONTRACTOR TO RECEIVE EXTRA PAY FOR REMOVAL OF ROCK NOT BLASTED.

   Where a contract for the construction of a public drain provided that the contractor should be paid additional compensation for the removal of solid rock which must be blasted to be removed, his right to receive the extra pay would not be barred by the fact that he removed rock, which ordinarily would be blasted, in some way other than by blasting because it was too dangerous to blast.[2]

3. MUNICIPAL CORPORATIONS—RIGHT OF PUBLIC OFFICERS TO MODIFY TERMS OF PUBLIC CONTRACT WHEN REQUIRED BY EXIGENCY NOT CONTEMPLATED.

   Although the right of public officers to change or alter the terms of a contract for public work, which has been awarded on competitive bids, without readvertising and reletting is greatly restricted, they may make modifications when required by an exigency to meet a situation in the nature and progress of the work that was neither understood nor contemplated when the contract was made.[3]

4. DRAINS—DRAIN COMMISSIONERS HAVE RIGHT TO MODIFY DRAIN CONTRACT WHEN CONFRONTED WITH EXIGENCY.

   Where, in excavating for a drain, the contractor encountered solid rock under conditions which rendered it too dangerous to blast, as provided for in the contract, the drain commissioners were within their rights in making an agreement with the contractor to pay on another basis, provided the cost thereof did not exceed the contract price for blasting, and, after paying therefor, they could not question their act in doing so, although the

[1]Evidence, 23 C. J. § 1810; [2]Drains, 19 C. J. § 181 (Anno); [3]Municipal Corporations, 28 Cyc. p. 1047.

question of whether or not it exceeded the amount that would have been allowed for blasting might not have been considered by them.[4]

Certiorari to Jackson; Parkinson (James A.), J. Submitted April 6, 1926. (Calendar No. 31,335.) Decided June 7, 1926. Rehearing pending.

Mandamus by the Woolman Construction Company to compel Emmett E. Cochrane, drain commissioner of Jackson county, and others to pay an order for the construction of a drain. From an order denying the writ, plaintiff brings certiorari. Reversed.

*Richard Price,* for appellant.

*Cobb, Bisbee & Wilson,* for appellee Cochrane.

SNOW, J. The plaintiff contracted in writing with Chauncey O. Worth, special drain commissioner for the county of Jackson, E. J. Doane, county drain commissioner for the county of Ingham, C. E. Deake, county drain commissioner for the county of Washtenaw, and J. Whitney Watkins, county drain commissioner for the county of Hillsdale, to construct a portion of the Grand River drain in Jackson county, according to certain specifications and for an agreed price. Among other things, the contract provided:

"In case solid rock is to be excavated, the contractor shall be paid for actual cost of removing said rock, less a price per cubic yard as bid for the construction of said drain, to which amount shall then be added an amount equal to fifteen (15) per cent. of such cost. By solid rock is meant rock which must be blasted in order to excavate the same, and boulders which require blasting or which must be removed by other means than by dipper excavations."

Immediately after the work of excavation was commenced, plaintiff ran into rock. Blasting was made

[4]Drains, 19 C. J. § 178.

dangerous because of the proximity of towers belonging to a power company, and sheds connected with a fair grounds. Then, too, plaintiff did not have ditch enough dug to back up and get the dredge out of the way. The respective drain commissioners were made acquainted with the situation, and it was orally agreed between them and the plaintiff that the rock was to be removed without resorting to blasting. Plaintiff was to keep account of all extra cost and was to be paid therefor.

The rock was not blasted, but was removed by putting large, heavy teeth on the dipper, which was worked into the crevices and the rock broken loose. It was slow work, and ordinarily would not have been done in this way. The circumstances and conditions were unusual, and it was considered by plaintiff practically impossible to blast. The work of excavating the rock having been done in this manner, a bill of extras according to the agreement, in the sum of $24,000, was presented to the commissioners for payment. A conference was had between plaintiff and the commissioners, and the bill was compromised and a warrant drawn "for rock excavation" for approximately $21,000. This warrant was drawn by defendant Cochrane, and signed by all of the commissioners, Mr. Cochrane included, and the money paid to plaintiff. This was in November, 1920.

Upon the completion of the drain, plaintiff presented its final bill for $21,794.91. All of the commissioners were satisfied with the bill and ready to sign the warrant for its payment, excepting Mr. Cochrane, the Jackson county commissioner. He refused, and plaintiff filed its petition for mandamus to compel the drain commissioners to issue an order for the payment of the amount due. All the commissioners, excepting Cochrane, filed answers admitting willingness to do so. Cochrane filed an answer in which he

denied a complete performance of the contract; denied he and the other commissioners had ever had a full settlement with plaintiff concerning the extra work of removing the rock; admitted signing the order in payment of the work, but claimed he did so through mistake and misrepresentations made to him, which induced him to believe plaintiff was entitled to the extra compensation for the removal of the rock.  He also denied the drain had been inspected and accepted by him.  The case was heard by the court and a jury, and at its conclusion, the court directed a verdict in favor of the plaintiff for $2,917.75, and found for the defendants as to the balance of the $21,794.91 bill presented, which in effect amounted to a denial of plaintiff's claim of right to be compensated for the removal of the rock, which item had previously been allowed and paid.  Plaintiff reviews this judgment by certiorari.

The determination of the case must rest upon the construction of the original contract in the light of the circumstances connected with the entire transaction, the right of the drain commissioners to agree to pay for construction on a basis not provided for in the written contract, and the effect that must be given to a settlement, and actual payment, on such basis.

As the record is made we must regard the contract as completed and the work accepted.  It was so regarded by the trial judge in his instructions to the jury, when he said:

"Now the basis of a recovery here, must be on the proposition that this contract was accepted and completed.  I am going to hold under the evidence in this case that it was, in point of law, completed and accepted."

And again:

"So, for the purposes of this case, I am going to in-

struct you that the contract has been performed on the part of this plaintiff company."

The record fairly discloses that solid rock, which ordinarily would require blasting for removal, was encountered at the beginning of the work. It also discloses, in connection therewith, that such unusual conditions existed that blasting could not well be resorted to, and that the circumstances required the rock to be picked to pieces and then removed by the dipper. These facts were recognized by the drain commissioners, and at all times conceded by them.

While we are mindful that the contract recites that "by solid rock is meant rock which *must* be blasted in order to excavate the same," we must recognize and take judicial knowledge of the fact that there is no rock so solid but what in time *could* be picked to pieces and removed by tools and instruments without the use of explosives. It must be recognized, too, that conditions might arise, as they did here, which would not permit blasting. The term solid rock as defined in the contract must be accepted and given interpretation in the light of the purpose to be accomplished by its removal. What the drain commissioners wanted was the construction of the drain. They were concerned in the result, not in the means or manner of its accomplishment. That the rock was not actually blasted, ought not of itself to bar plaintiff's right to extra compensation. It cannot be seriously contended that the character of the rock was such, with no unusual conditions attending, as to ordinarily require its removal by blasting. Plaintiff then would have had the right, under the contract, to blast, and if it had blasted, of course would have been entitled to the compensation provided in such cases. It did not blast, and the record discloses no proof of the comparative cost of the removal of the rock by blasting, and by the means permitted and actually used.

We are thus brought to the question of the extent of the right of the commissioners to agree with plaintiff for the payment of extra compensation on a different basis than the original contract provided. Emergencies in construction work, which necessitate some change in the contemplated manner of doing the same, are not infrequently met with as such work progresses. This of course occurs in public as well as private enterprise. Public work ought not to be unreasonably and unnecessarily interrupted because necessity requires change or variation in the mode of procedure, unless those affected are caused thereby to suffer material injury.

But the right of public officers to in any way change or alter the terms of a contract for public work, which has been awarded on competitive bids, must without readvertising and reletting be greatly restricted. They may not grant or authorize extra compensation to the contractor whereby the contract price shall be increased; they may not substitute some other kind of material, for instance, for the one specified in the contract; they may not direct a different route over which the public improvement shall be constructed; and they are restricted by all statutory provisions in regard to the particular contract.

It is conceded, however, that they may make modifications "when required by an exigency to meet a situation in the nature and progress of the work that was neither understood nor contemplated when the contract was made." 2 Dillon on Municipal Corporations (5th Ed.), p. 1235; *County of Randolph* v. *Post,* 93 U. S. 502.

Such situation presented itself in the instant case soon after work was started. While it had been foreseen that solid rock, which ordinarily should be removed by blasting, might be encountered, it was not foreseen that the conditions might be such, when such

solid rock was encountered, that one could not blast with safety. If the drain commissioners were powerless to make any different arrangements with the contractor for the removal of the rock that could not be blasted, it would result in the holding up of the public improvement with no resultant good to any one. If the rock could possibly be removed without blasting and without delaying the work, the drain commissioners were within their rights to make the arrangement they did with the contractor, provided the cost did not exceed the cost of blasting as provided by the original contract.

We are constrained to hold that plaintiff is entitled to the compensation as agreed upon between it and the commissioners up to the amount it would have been entitled to under the contract, had it blasted the rock. While it has been asserted by plaintiff that the amount agreed upon was less than the cost would have been under the terms of the contract for blasting, there is no satisfactory evidence as to the correctness of this assertion. But the allowance and payment by the defendants to plaintiff of an amount satisfactory to all parties must be held as determining it, and defendants may not now question their act of voluntary payment of this amount, although the question of whether or not it exceeded the amount that would have been allowed for blasting might not have been considered by them.

Plaintiff is therefore entitled to an order for the payment of its bill in the sum of $21,794.91 without interest, and mandamus may issue as prayed, if necessary. Plaintiff will recover costs.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, CLARK, and McDONALD. JJ., concurred.